**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JOHN NAPOLITANO,

                         Plaintiff,

              -against-

PATRICK RYDER, Police Commissioner,
Nassau County Police Department,
LT. MARK TIMPANO, Commander, Pistol License
Section, Nassau County Police Department,
INVESTIGATOR LEAHY, Pistol License Section,
Nassau County Police Department, and the
COUNTY OF NASSAU,

                       Defendants.
-------------------------------------------------------------X

                         **REPORT AND**
                        **RECOMMENDATION**

                        CV 18-3607 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

        Plaintiff John Napolitano ("Plaintiff") commenced this action against Nassau County

Police Commissioner Patrick Ryder, Commander of the Pistol License Section of the Nassau

County Police Department Lt. Mark Timpano ("Lt. Timpano"), Investigator Leahy of the Pistol

License Section of the Nassau County Police Department ("Investigator Leahy"), and the County

of Nassau, (collectively, "Defendants"), alleging deprivation of his constitutional rights.

Specifically, Plaintiff alleges that Defendants' failure to return his pistol license or to provide

him with a post-deprivation hearing following the suspension of his license violated, and

continues to violate, his Second and Fourteenth Amendment Rights under the United States

Constitution. *See generally* Plaintiff's Complaint ("Compl.") [DE 1].

On August 10, 2018, Plaintiff moved for a preliminary injunction, seeking an order directing Defendants to return his pistol license, as well as an order directing Defendants to make several changes to the Nassau County Police Department's policy regarding suspension and reinstatement of pistol licenses. *See* Plaintiff's Motion for a Preliminary Injunction ("Mot. for Prel. Inj.") [DE 23]; Plaintiff's Memorandum in Support of his Motion ("Pl.'s Mem.") [DE 24]; Plaintiff's Reply Memorandum ("Pl.'s Reply") [DE 31]. Defendants oppose the motion, arguing that Plaintiff is not entitled to reinstatement of his pistol license. *See* Defendants' Memorandum in Opposition ("Defs.' Opp'n.") [DE 30]. Declaration of Attorney Ralph J. Reissman in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Reissman Decl.") [DE 30-1]. Judge Feuerstein has referred Plaintiff's motion for a preliminary injunction to this Court for a report and recommendation on whether the motion should be granted. *See* DE 34. For the following reasons, this Court respectfully recommends to Judge Feuerstein that Plaintiff's motion for a preliminary injunction be DENIED.

## II. BACKGROUND

### A. Factual Background

Although the allegations relevant to Plaintiff's motion are not complex *per se*, there are several discrepancies in the order of those events which are worth noting. To highlight these discrepancies, the Court summarizes the factual allegations laid out by both sides, beginning with the allegations in the Complaint and followed by the facts as alleged by the parties in their respective motion papers.

#### 1. Facts as Alleged in the Complaint

According to the Complaint, on or about February 26, 2018, an *ex parte* Order of Protection was issued by the Family Court, Nassau County, and was served upon Plaintiff.

Compl. ¶ 12. The Order was issued pursuant to the complaint filed by Plaintiff's wife in connection with a divorce proceeding. *Id*. Plaintiff states that "[p]ursuant to the laws of the State of New York, Plaintiff's Pistol License was suspended and possession of any firearms by the Plaintiff was prohibited." *Id*. ¶ 13. The Complaint goes on to assert that "[s]hortly thereafter[,] Plaintiff received a pistol license suspension letter from the Nassau County Police Department, Pistol License Section." *Id*. ¶ 14. The Order of Protection was subsequently vacated at a hearing before the Family Court on April 23, 2018 and the underlying proceeding was dismissed. *Id*. ¶ 15. Notwithstanding the fact that Plaintiff delivered a copy of the order vacating the Order of Protection to the Pistol License Section of the Nassau County Police Department, the Defendants have refused to reinstate Plaintiff's pistol license. *Id*. ¶ 17. Similarly, Plaintiff requested a "post-deprivation hearing" before a neutral party regarding reinstatement of his pistol license. While Plaintiff did not affirmatively state so, the implication is that Plaintiff has not been given what he sees as a required hearing. *Id*. ¶ 18. Plaintiff also states that Defendants advised him that his pistol license will remain suspended for a period of two years, at a minimum, and whether it is reinstated will depend on the result of an investigation. *Id*. ¶ 19.

In response to these allegations, Defendants' Answer denies knowledge of Plaintiff's allegations regarding issuance of the *ex parte* Order of Protection, and denies that Plaintiff has requested a post-deprivation hearing. However, Defendants admit that Plaintiff was sent a license suspension letter and that his license remains suspended. *See* Defendants' Answer ("Answer") [DE 27] ¶¶ 12-20.

### 2.     *Facts as Presented in the Motion Papers*

Plaintiff's motion for a preliminary injunction is factually consistent with the allegations in his Complaint in that Plaintiff alleges he was served the *ex parte* Order of Protection, which, "[p]ursuant to the laws of New York," triggered the suspension of his license, and following which he "received a pistol license suspension letter" from Defendants.  Pl.'s Mem. at 1. Similarly, in his affidavit in support of his motion, Plaintiff states as follows:

> In February of 2018 I filed for a divorce.  On or about February 26, 2018 my wife Susan Xu, filed a Petition for an Order of Protection. An *Ex Parte* Order of Protection was served on me, issued by the Family Court, State of New York, County of Nassau, File Number 605372.  Having anticipated this, I transferred all my pistols to a licensed firearms dealer.  Shortly after the *exparte* [*sic*] order was issued, my pistol license was suspended.

August 9, 2018 Affidavit of John Napolitano, attached to Pl.'s Mem. as Ex. 2 ("Napolitano Aff.") [DE 24-2] at 2.[1]  Thus, according to the Plaintiff, his pistol license was not suspended until on or after February 26, 2018 and was suspended only as a result of the *ex parte* Order of Protection issued by the Family Court.

In their opposition papers, Defendants state that Plaintiff and his wife were involved in three domestic disputes, occurring on September 20, 2017, December 31, 2017, and January 4, 2018.  Defs.' Opp'n. at 4-5.  Upon receiving notice of the third domestic disturbance, Defendant Investigator Leahy recommended suspension of Plaintiff's pistol license "due to the frequency and severity of the domestic incidents between plaintiff and his wife."  *Id*. at 5; August 22, 2018 Affidavit of Lt. Marc Timpano in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Timpano Aff.") [DE 31-1], ¶ 19.  At that time, Lt. Timpano notified Plaintiff, in writing, that

---

[1]   Neither the paragraphs nor the pages of the Napolitano Affidavit are numbered. Therefore, the Court references any passages taken from the Affidavit by stating the number of the page in the order in which it appears in the document.

he was "required to surrender all of his firearms to the Pistol License Section, which Plaintiff did on January 8, 2018." Timpano Aff. ¶ 19; *see* "Notice of Pistol License Suspension," annexed as Ex. B to the Timpano Aff. Thus, according to Defendants, the decision to suspend Plaintiff's pistol license was a discretionary act independent of the *ex parte* Order of Protection. Accordingly, Plaintiff's license was suspended on or about January 4, 2018, and Plaintiff surrendered his firearms on January 8, 2018, almost two months prior to the *ex parte* Order of Protection referenced by Plaintiff.

Apart from the apparent discrepancy as to what event triggered the suspension of Plaintiff's pistol license – the third domestic disturbance between Plaintiff and his wife or the *ex parte* Order of Protection – another factual component of Plaintiff's motion is relevant for the Court's analysis. In his Affidavit, Plaintiff alleges that his cousin, Dean Kypreos ("Kypreos") has recently made threats against his life. Plaintiff states that in April of 2017, Kypreos called Plaintiff from jail asking for help, where Kypreos was incarcerated for threatening to kill his mother and his pregnant sister while intoxicated. Napolitano Aff. at 2. Plaintiff states he attempted to help Kypreos while Kypreos was incarcerated, and on May 23, 2017 Plaintiff dropped his cousin off at a rehab clinic in Queens. *Id*. at 3. "Once in the rehab [Kypreos] started posting on Instagram within 5 minutes about being back on the streets and dealing drugs. [Plaintiff] called [Kypreos'] mother and told her [Plaintiff] was done helping her middle aged, drug dealer and gang member son." *Id.*

According to the Plaintiff, Kypreos called him on July 26, 2018 and made threats against his life, including the threat that he would shoot the Plaintiff and burn his house down, that he was not afraid of going back to jail, that if Plaintiff went to the police, he would kill Plaintiff when he got out. *Id.* Plaintiff asserts that he recorded the call, and attaches what purports to be a

transcript of the call to his Affidavit.  *See* Napolitano Aff., Exs. 2B and 2C.  Plaintiff also submitted a still photo from and Insta Graham video which Plaintiff claims shows "what appears to be a pistol in Kypreos waist band."  Napolitano Aff. at 3 and Ex. 2D.

### B.    The Contentions of the Parties

#### 1.    *Plaintiff's Arguments*

Plaintiff's motion challenges the constitutionality of the New York State statutory and regulatory schemes addressing pistol licenses, arguing that in light of recent Second Amendment jurisprudence, New York's laws and Nassau County's policies are unconstitutional.  *See generally* Pl.'s Mem.   Specifically, Plaintiff maintains that Nassau County's failure to provide a "post-deprivation hearing" when a pistol license has been suspended violates general principles of due process.  *See id*. at 7-10.  He also contends that New York State Penal Law Articles 265 and 400 are unconstitutional because "Penal Law 265 makes it illegal to possess a pistol without a license and then Article 400 allows [a] Licensing Officer to 'decide on a case-by-case basis' whether a person can exercise that right, based on his own subjective standards."  *Id*. at 18.  Similarly, Plaintiff argues that because his license was suspended under New York Family Court Act § 842-a, which governs orders of protection, Nassau County's continued suspension of his license after the vacatur of the *ex parte* Order of Protection is unlawful.

According to the Plaintiff, he is entitled to a preliminary injunction because he is likely to succeed on the merits of his suit.  In support of this assertion, Plaintiff states that "this court has already held the failure to provide a post-deprivation hearing to be a violation of the 5th and 14th Amendment due process provisions" in *Razzano v. County of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y. 2011) and *Panzella v. Cty. of Nassau*, No. 13-CV-5640, 2015 WL 5607750, at *1 (E.D.N.Y. Aug. 26, 2015), *aff'd in part, appeal dismissed in part sub nom. Panzella v. Sposato*,

863 F.3d 210 (2d Cir. 2017), *as amended* (July 18, 2017).  Pl.'s Mem. at 23.  Further, Plaintiff

claims back he "has shown that the New York Statutes under which the pistol licensing officer

operates and the New York state cases interpreting those statutes to be completely contrary to the

decisions of the United States Supreme Court."  *Id*.

In addition to asserting a likelihood of success on the merits, Plaintiff argues that he will

suffer irreparable harm without an injunction and reinstatement of his pistol license because he

"faces specific threats to his life and that of his two-year old son from a convicted felon,"

namely, his cousin, and needs to be able to lawfully protect himself.  *Id*. at 20.

### 2. *Defendants' Opposition*

Defendants make two principal points in opposing the motion.  First, they argue that

under established New York statutory and case law, "issuance of a handgun license is a

privilege, rather than a right," and "[l]icensing officers are vested with broad discretion in

resolving issues regarding the fitness of individuals to possess firearms."  Defs.' Opp'n. at 7.

Because they "properly exercised their administrative discretion in suspending [Plaintiff's]

license," Defendants maintain that Plaintiff's suit lacks merit.  *Id*. at 8.

Next, Defendants contend that "Plaintiff cannot establish the single most important

element required for the issuance of a preliminary injunction because the potential harm he

claims, *i.e.*, alleged threat from his cousin Dean Kypreos, is remote and speculative, and neither

actual [n]or imminent.  Plaintiff merely asserts the *possibility* of harm and not its imminency

[*sic*]."  Defs.' Opp'n. at 9 (emphasis in original).  Defendants are critical of the language used by

the Plaintiff to describe the circumstances involving his cousin.  In particular, they characterize

what they see as Plaintiff's attempt to seek "this Court's blessing to shoot his cousin if, and only

if, his cousin physically confronts him.  This is simply to[o] speculative and remote to justify a preliminary injunction."  *Id*.

### B. Procedural Background

Plaintiff filed his Complaint in this action on June 21, 2018.  *See* DE 1.  The instant motion for a preliminary injunction was filed on August 10, 2018, *see* DE 23, 24, and was fully briefed as of August 29, 2018.  *See* DE 31.  Judge Feuerstein held a conference with the parties on October 16, 2018, at which time she referred the instant motion to this Court for a report and recommendation as to whether the motion should be granted.  *See* DE 34.

## III. LEGAL STANDARD

"District courts may ordinarily grant preliminary injunctions when the party seeking the injunction demonstrates (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) 'that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party.'"[2]  *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) (per curiam)); *Riddick v. Maurer*, 730 Fed. App'x 34, 37 (2d Cir. 2018) (summary order); *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979); *Checker Motors Corp. v. Chrysler Corp.,* 405

---

[2]  Many courts also list as distinct elements "that a preliminary injunction [be] in the public interest," *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015), as well as that "the balance of equities tips in [plaintiff's] favor."  *Stagg P.C. v. United States Dep't of State*, 673 Fed. App'x 93, 95 (2d Cir. 2016), *cert. denied sub nom. Stagg P.C. v. Dep't of State*, 138 S. Ct. 721, 199 L. Ed. 2d 526 (2018).

F.2d 319, 323 (2d Cir. 1969). As the Second Circuit has stated, "[t]he 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc.*, 598 F.3d at 35. However, the Second Circuit has recognized three limited exceptions to application of the "serious questions" standard: (1) the standard is inappropriate "[w]here the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme," *Able v. United States,* 44 F.3d 128, 131 (2d Cir. 1995) (quoting *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989)); (2) "[a] heightened 'substantial likelihood' standard may also be required when the requested injunction [a] would provide the plaintiff with 'all the relief that is sought' and [b] could not be undone by a judgment favorable to defendants on the merits at trial," *Mastrovincenzo v. City of New York,* 435 F.3d 78, 90 (2d Cir. 2006); and (3) "a 'mandatory' preliminary injunction that 'alter[s] the status quo by commanding some positive act,' as opposed to a 'prohibitory' injunction seeking only to maintain the status quo, 'should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." ' " *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 36 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985)); *see Citigroup Glob. Markets, Inc.*, 598 F.3d at 35 n.4 (summarizing the three exceptions).

The first and third exceptions noted above are relevant to the Court's review of Plaintiff's motion for a preliminary injunction. The first exception "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively

reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able*, 44 F.3d at 131. In *Able*, the Second Circuit distinguished cases in which it had held that the "serious questions" standard applied – cases in which plaintiffs were challenging actions confined to a single branch of government or actions entirely outside the regulatory process – from cases in which the "full play of the democratic process involving both the legislative and executive branches" was implicated, and because of which the "likelihood of success" standard was more appropriate. *Id.* at 131-32; *see Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 111 (2d Cir. 2014) (clarifying further this distinction).

As to the third exception, "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics." *Tom Doherty Assocs., Inc.* 60 F.3d at 34. Yet the key distinction is, in the abstract, easy enough to grasp:

> A preliminary injunction is usually prohibitory and seeks generally only to maintain the status quo pending a trial on the merits. A prohibitory injunction is one that "forbids or restrains an act." *Black's Law Dictionary* 788 (7th ed.1999). For example, in the typical trademark case a prohibitory injunction seeks to stop alleged infringement. A mandatory injunction, in contrast, "orders an affirmative act or mandates a specified course of conduct," *id.,* such as requiring a defendant to turn over phone numbers featuring a tradename or to assign a trademark.

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) (internal citations omitted).

Plaintiff here asks the Court for an order directing the following temporary relief:

> (a) Ordering Defendants to place time limits on decisions regarding pistol licenses; (b) Ordering Defendants to provide written notice of decisions regarding pistol licenses and the reasons for said decisions; (c) Ordering Defendants to institute a procedure, for a 'prompt post deprivation' hearing before an 'impartial decision maker' when ever a pistol license is suspended, revoked or delayed,

> or when any fire arms are confiscated . . . ; (d) Ordering Defendants
> to give notice of the procedure to be used to demand the aforesaid
> 'prompt post deprivation' hearing; [and] (e) Ordering Defendants to
> return Plaintiff's pistol license to him.

Pl.'s Mot. Plaintiff's motion also seeks a finding that Articles 265 and 400 of the New York State Penal Law are unconstitutional under the Supreme Court's decisions in *District of Columbia v. Heller*, and *McDonald v. City of Chicago*. Further, Plaintiff seeks a determination that Defendants' policy "in expanding their suspension of pistol licenses to the prohibition of long guns, even after the Order of Protection has been vacated," is "an unconstitutional policy and an *ultra vires* act." *Id*.

Because Plaintiff seeks, *inter alia*, a declaration that Articles 265 and 400 of the Penal Law are unconstitutional, as well affirmative relief from Defendants in the form of changes to the County's policies and the return of Plaintiff's pistol license, both the first and third exception to the "serious questions" standard are implicated. In particular, the relief Plaintiff seeks is intended (i) "to stay government action taken in the public interest pursuant to a statutory or regulatory scheme" *Able*, 44 F.3d at 131 (the first exception), and (ii) to "alter[ ] the status quo by commanding some positive act," *Tom Doherty Assocs., Inc.*, 60 F.3d at 36 (the third exception). Because the relief Plaintiff seeks implicates two exceptions to the application of the "serious questions" standard, application of that standard is not appropriate. Rather, the Court must apply the "likelihood of success on the merits" standard. Accordingly, Plaintiff needs to be able to show, in addition to irreparable harm in the absence of a preliminary injunction, that he is likely to succeed on the merits of his claims. The Court addresses each of these requirements in turn.

# IV.   DISCUSSION

## A.   Irreparable Harm

"Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction,' requiring the movant to show such injury is 'likely' before the other elements may be considered." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 457 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). As the Second Circuit has stated, "[t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007)).

"As a general rule, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights." *Smith v. Fredrico*, No. 12-CV-04408, 2013 WL 122954, at *6 (E.D.N.Y. Jan. 8, 2013) (collecting cases); *see* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 11A FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."). Although the mere assertion of a constitutional injury is insufficient to trigger a finding of irreparable harm, "where the constitutional deprivation is convincingly shown *and that violation carries noncompensable damages,* a finding of irreparable harm is warranted." *Smith*, 2013 WL 122954, at *6 (emphasis in original) (citing *Donohue v. Paterson,* 715 F. Supp. 2d 306, 315 (N.D.N.Y. 2010)); *E.E.O.C. v. Local 638,* No. 71 Civ. 2877, 1995 WL 355589, at *5

(S.D.N.Y. June 7, 1995) ("[W]hen 'personal' constitutional rights are violated and the harm that accompanies the violation is remediable or compensable, the damage is not irreparable.").

The heart of Plaintiff's lawsuit is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Second Amendment (Count I) and Fourteenth Amendment[3] (Count II) to the federal Constitution. *See generally* Compl. Plaintiff argues he has "an individual, enumerated, fundamental right to possess a handgun" and "to a pistol license" under the Second Amendment, and that in refusing to return Plaintiff's pistol license and in threatening to prosecute him should he possess any firearms, Defendants have violated these rights. *Id*. at 5-6. As to the Fourteenth Amendment, Plaintiff contends that "Defendants' failure and refusal to return Plaintiff's pistol license . . . and their failure and refusal to provide a 'prompt post deprivation hearing' regarding retention of his pistol license" constitutes a violation of his Fourteenth Amendment due process rights. *Id*. at 7.

Based on the Court's reading of Plaintiff's arguments, the two theories of constitutional deprivation which Plaintiff asserts appear to converge on the same alleged harm, namely, Plaintiff's inability to lawfully protect himself and his son through the use of a firearm and the resulting risk of serious physical injury or death. Without prematurely addressing the likelihood of Plaintiff's success on the merits, a cursory examination of the viability of these theories is necessary because the mere assertion of constitutional deprivations is insufficient to establish irreparable harm; the deprivation must be "convincingly shown." *Smith*, 2013 WL 122954, at *6.

---

[3]  Although Plaintiff purports to bring his due process claim under both the Fifth and Fourteenth Amendments, it is not clear to the Court on what basis his rights under the Fifth Amendment – which exist only with respect to the federal government – were violated.

The Second Amendment protects a citizen's right to possess a firearm and use it for lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 572 (2008). "As the United States Supreme Court ruled in *Heller*, self-defense of the home constitutes a 'lawful purpose' and 'the *central component* of the right [to bear arms].'" *Abraham v. Town of Huntington*, No. 17-CV-03616, 2018 WL 2304779, at *12 (E.D.N.Y. May 21, 2018) (quoting *Heller*, 554 U.S. at 599). "Self-defense is a basic right, recognized by many legal systems from ancient times to the present, and the *Heller* Court held that individual self-defense is 'the central component' of the Second Amendment right." *Abraham*, 2018 WL 2304779, at *12 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 744 (2010)).

With respect to due process under the Fourteenth Amendment, courts in this Circuit have recognized that confiscation by police of otherwise lawfully possessed firearms is violative of due process when there is no prompt post-deprivation hearing afforded. Significantly, the cases addressing this issue have determined that such a confiscation constitutes a deprivation of due process when it is made pursuant to *either* a Family Court Act § 842-a temporary Order of Protection, *see Panzella,* 2015 WL 5607750, at *1, *or* an inherent discretionary determination by law enforcement, *see Razzano*, 765 F. Supp. 2d at 190-91 – the divergent sets of circumstances alleged by Plaintiff and Defendants, respectively.

The state of the law as described above provides at least some foundation on which Plaintiff's constitutional claims can rest: the nature of the rights afforded by the Second and Fourteenth Amendments is such that it is conceivable that Defendants may have violated those rights. Based on this determination, as well as the factual support Plaintiff submits to bolster his motion – which will be addressed in greater detail below – the Court concludes that Plaintiff's alleged constitutional deprivations have been "convincingly shown" for purposes of the

irreparable harm inquiry.  In addition, the nature of the damages which Plaintiff argues will

likely flow from these deprivations are by their nature "noncompensable" – monetary damages

are insufficient to compensate Plaintiff for the harm of serious physical injury or death.  Because

"the constitutional deprivation is convincingly shown *and* that violation carries noncompensable

damages*,* a finding of irreparable harm is warranted."  *Smith*, 2013 WL 122954, at *6 (emphasis

added).  *Cf. Ezell v. City of Chicago*, 651 F.3d 684, 699-700 (7th Cir. 2011) ("The Second

Amendment protects [ ] intangible and unquantifiable interests.  *Heller* held that the

Amendment's central component is the right to possess firearms for protection.  Infringements of

this right cannot be compensated by damages.  In short, for reasons related to the form of the

claim and the substance of the Second Amendment right, the plaintiffs' harm is properly regarded

as irreparable and having no adequate remedy at law.").

 The Court also finds that based on the evidentiary support provided by Plaintiff, the

injury he claims he would suffer in the absence of a preliminary injunction "is neither remote nor

speculative, but actual and imminent, and one that cannot be remedied if a court waits until the

end of trial to resolve the harm*." Faiveley Transp. Malmo AB*, 559 F.3d at 118.  Plaintiff

submits, *inter alia*, an affidavit supplemented by a transcribed telephone call of July 31, 2018 in

which he claims his cousin, Dean Kypreos, made specific threats against his life.  An

examination of the transcript shows that Kypreos made no less than three separate and graphic

threats on Plaintiff's life.  *See* Napolitano Aff., Ex. 2B.  According to the transcript, Kypreos

stated "I'll shoot you dead in your face," "I will hop out your bushes and blow your brains out,"

and "I'll be out [of jail] and I'll murder you."  *Id*.  Plaintiff reported the threats to the police.  *Id*.,

Ex. 2C.  Although Plaintiff does not present evidence indicating the precise date and time at

which Kypreos will attempt to assault or murder him, the Court finds that the evidence submitted

by Plaintiff supports a risk of "actual and imminent" injury at the hands of Kypreos.[4]  The Court

therefore concludes that in addition to convincingly showing constitutional deprivations carrying

noncompensable injuries, Plaintiff has identified an injury that is "actual and imminent," and

thereby constituting irreparable harm.[5]

### B.    Likelihood of Success on the Merits

To succeed on his motion, however, Plaintiff must also show that he is likely to be

successful on the merits of his claims.  Although there is some legal basis for his constitutional

claims as identified above, the Court finds that Plaintiff's claims challenging the statutory and

regulatory schemes regarding firearms in New York, as well as the policies and actions of

Defendants, are unlikely to be successful on their merits.

---

[4]     [T]he question has arisen whether affidavits on a motion for a preliminary injunction must conform to the strict standards of Rule 56(c)(4) for affidavits on a motion for summary judgment.  If the answer is affirmative, it would mean that they must be made on personal knowledge, must set forth facts that would be admissible in evidence, and must show that the affiant is competent to testify to those facts.  The federal rules do not explicitly require this standard to be applied to preliminary-injunction affidavits and a consideration of the different policies that underlie Rules 56 and 65 indicates this standard should not be imposed on applications under Rule 65.

Procedure on an Application for a Preliminary Injunction, 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed.).

[5]  The Court recognizes that Plaintiff's circumstances are unusual, as the harm from which Plaintiff alleges he is at risk is being caused by a third-party – Defendant's cousin.  Yet the Court was unable to find any case law proscribing an injunction meant to protect from harm caused by third-parties, so long as "[a] plaintiff [ ] connect[s] future harm to the absence of an injunction" (*i.e.,* show that he or she will be irreparably harmed if the Court does not grant the requested preliminary injunction).  *Doe v. Quinnipiac Univ.*, No. 3:17-CV-364, 2017 WL 1206002, at *5 (D. Conn. Mar. 31, 2017)

### *1.      Second Amendment Claims*

With regard to Plaintiff's arguments that both State law and the local policies of the

Defendants did violate and continue to violate Plaintiff's Second Amendment right to keep and

bear arms, the Court is obliged to follow the "case law within this circuit [which] indicates that

'the "right to bear arms" is not a right to hold some particular gun.'" *Perros v. Cty. of Nassau*,

238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) (quoting *Garcha v. City of Beacon*, 351 F. Supp. 2d

213, 217 (S.D.N.Y. 2005)).  Because there is no constitutional right to possess and retain some

particular gun, such as a pistol, Plaintiff is unable to show that he has a specific constitutional

right to a pistol license.  Indeed, relevant case law establishes that because "New York law vests

the License Division with broad discretion in determining whether to deny a handgun permit,"

*Toussaint v. City of New York*, No. 17-CV-5576, 2018 WL 4288637, at *7 (E.D.N.Y. Sept. 7,

2018), and because "[t]he presence of that discretion precludes any legitimate claim of

entitlement," *Spanos v. City of New York*, No. 15-CV-6422, 2016 WL 3448624, at *2 (S.D.N.Y.

June 20, 2016), Plaintiff does not have a specific constitutional right to a pistol license.  *See*

*Toussaint,* 2018 WL 4288637, at *7 (dismissing plaintiff's complaint because "he cannot show

that he has a protected liberty or property interest in a 'possible future [handgun] license'")

(quoting *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009)); *Perros*, 238 F. Supp. 3d

at 401 ("Under New York law, it is well-settled that the possession of a handgun license is a

privilege, not a right.") (quotations omitted); *Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010)

(suggesting that, while a Connecticut plaintiff has a liberty interest in a firearm permit, a New

York plaintiff may not have one because New York licensing officers have broader discretion in

issuing firearm licenses).

For the reasons laid out in the preceding paragraph, and further diminishing the likelihood of success of Plaintiff's Second Amendment claims, courts in this Circuit have repeatedly upheld the constitutionality of New York Penal Law § 400.01(1) and New York's firearm licensing laws generally, which Plaintiff argues are "in Total Contravention of the Decisions of the United States Supreme Court." Pl.'s Mem. at 17. *See Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 443 (W.D.N.Y. 2018); *Toussaint,* 2018 WL 4288637, at *6; *Mishtaku v. City of New York*, No. 14-CV-839, 2015 WL 13002182, at *5 (S.D.N.Y. May 4, 2015)*, aff'd sub nom. Mishtaku v. Espada*, 669 Fed. App'x 35 (2d Cir. 2016); *Aron v. Becker*, 48 F. Supp. 3d 347, 369-71 (N.D.N.Y. 2014). These courts have found New York's licensing regime to pass constitutional muster under the appropriate standard, namely, intermediate scrutiny. *See Avitabile v. Beach*, 277 F. Supp. 3d 326, 334 (N.D.N.Y. 2017) ("[D]istrict courts in this Circuit have continually chosen to apply 'intermediate scrutiny' to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home."). This Court cannot conclude that Plaintiff's argument to the contrary will be successful given the current state of the law in both New York and the Second Circuit.

### 2. *Fourteenth Amendment Claim*

Plaintiff's claim of deprivation of his due process rights under the Fourteenth Amendment is a procedural due process claim. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't,* 692 F.3d 202, 218 (2d Cir. 2012). As referenced above, because Plaintiff does not have a protectable interest in his pistol license, his Fourteenth Amendment procedural due process claim is also unlikely to be successful.

The Court also needs to address Plaintiff's argument that he is entitled to a "prompt post deprivation hearing." Plaintiff points to two decisions from the Eastern District of New York in arguing that such a hearing is required by due process considerations. In *Razzano*, 765 F. Supp. 2d at 191, Judge Spatt held that application of the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976) required police officers, who confiscated nine longarms from a plaintiff they determined to be dangerous, to provide a prompt post-deprivation hearing. Building on *Razzano*, Judge Azrack in *Panzella,* 2015 WL 5607750, at * 7, held that a plaintiff whose longarms were confiscated by the Nassau County Sheriff's Department following service of a Family Court Act § 842 Order of Protection was entitled to a "hearing consistent with the principles set forth in *Razzano*." *Id.* at *7.

These decisions are inapposite to Plaintiff's claim that Defendants are required to provide him with a post-deprivation due process hearing, for the simple reason that these decisions concern due process rights with respect to longarms, such as rifles and shotguns, rather than pistols and pistol licenses. Drawing on language from *Razzano*, Judge Azrack explained in *Panzella* that "[l]ongarms pose a unique legal issue because, unlike other firearms, 'there is no license requirement for the purchase or possession of longarms' in Nassau County."[6] *Panzella*, 2015 WL 5607750, at *1 (quoting *Razzano*, 765 F. Supp. 2d at 180). Individuals have a

---

[6]   The Court recognizes that pursuant to New York Penal Law § 400.00(11)(a), "a [pistol] license may be revoked and cancelled at any time in . . . counties of Nassau and Suffolk, by the licensing officer," and if this happens, "such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency." *Id.*(11)(c). This would appear to impose, in certain circumstances, a *de facto* license requirement on longarms. However, as the Court has discussed, multiple cases have upheld the constitutionality of Section 400.00, and the Court is aware of no case casting doubt on the constitutionality of this portion of Section 400.00(11) specifically.

protectable interest in longarms, and the process due before the government may confiscate longarms is necessarily more robust as a result.

The cases cited by Plaintiff for the proposition that he is entitled to a prompt post-deprivation hearing – limited as they are to longarms – are unavailing. For the reasons discussed above, no such process is due to the Plaintiff in these circumstances.

## V.   CONCLUSION

Although Plaintiff has satisfied the "irreparable harm" component of the preliminary injunction standard, he has not shown that he is likely to be successful on the merits of his claims. Consequently, the Court respectfully recommends to Judge Feuerstein that Plaintiff's motion for a preliminary injunction be DENIED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra Feuerstein, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York

January 30, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge